CASE ⁵ — PETITION BY A. T. HENDERSON AND OTHERS
FOR MANDAMUS AGAINST R. D. DAVIS, COUNTY
JUDGE OF BOYD COUNTY, TO COMPEL HIM TO
ORDER A LOCAL OPTION ELECTION.—October 31.

## Davis, County Judge, v. Henderson, &c.

Appeal from Boyd Circuit Court.

S. G. KINNER, Circuit Judge.

From an order overruling a demurrer the defendant appeals. Reversed.

1. Intoxicating Liquors—Local Option Election—Petition—Withdrawal of Signature.—Signers of a petition for a local option election may withdraw their names before the petition is acted on.

2. Words and Phrases—"Petition."—A petition is a formal written request or prayer for a certain thing to be done, the signers of which attach their signatures voluntarily.

3. Intoxicating Liquors—Local Option—Petition—Number of Signers.—Ky. Stats., 1903, section 2554, provides that on written petition, signed by a number of voters in such precinct of the territory to be affected, equal to 25 per cent of the votes cast in each of such precincts at the last preceding general election, and when for town or city elections, the number of votes cast at the last city or town election, it shall be the duty of the county court judge to order the election, etc. Held, That where a local option election is desired in a magisterial district composed of seven election precincts, five of which are within the limits of a city, the petition must be signed by a number of voters in each precinct equal to 25 per cent of the votes cast therein at the last preceding general election; a petition signed by 25 per cent of the voters of the entire district being insufficient.

4. Same—General Election—Construction.—The term "last general election," as used in Ky. Stats., 1903, section 2554, requiring a petition for local option election to be signed by 25 per cent of the votes cast at the last preceding

general election means the last preceding general election at which officers for the State or county embracing the district in question were elected, and not the last congressional election.

S. S. WILLIS, attorney for appellant.

L. F. Zerfoss and E. B. Hager of counsel.

POINTS AND AUTHORITIES.

1. To obtain an order for an election in a magisterial district a number of legal voters in each precinct of the territory to be affected equal to 25 per cent. of the votes cast in each precinct therein at the last preceding general election must sign the petition and remain thereon. (Ky. Stats., section 2554; Nall v. Tinsley, 107 Ky., 452; Tousey v. DeHuy, 62 S. W., 1118.)

2. A person who signs a petition for a local option election can withdraw therefrom at any time before the order is made. (Dutton v. Hanover, 42 Oh. St., 215; Hayes v. Jones, 27 Oh. St., 218; Simpson v. Comth., 97 S. W. 404, 30 Ky. Law Rep. 132; O'Neal, etc., v. Minary, etc., 30 Ky. Law Rep. 891, 101 S. W. 951.)

3. It is in the sound discretion of the county court to permit or deny the withdrawal of names from such petition, and its action can not be controlled or reviewed in a mandamus proceeding. (Colvin v. Finch, 87 S. W., 443; Comth. v. Boone, 82 Ky., 632; Dickens v. Cave Hill, 93 Ky., 385; Wright v. Baker, 94 Ky., 343; Leslie Co. v. Wooten, 115 Ky., 855.)

4. An election can not be ordered in a magisterial district which embraces a portion of a fourth class city, unless it is set ahead far enough to permit the city to obtain a separate election. (Gentry v. Peyton, 30 Ky. Law Rep., 894; Yates v. Nunnelly, 30 Ky. Law Rep. 984, 102 S. W. 292.)

5. General election defined. (Ky. Stats., section 2554; State v. King, 17 Mo., 511; Kenfield v. Irwin, 52 Cal., 164: State v. Cobb, 2 Kan., 32; Bond v. White, 8 Kan., 333; McIntyre v. Iliff, 68 Pac., 633.)

R. S. DINKLE and W. M. PRITCHARD for appellees.

There are three jurisdictional facts that the petitioners must establish by proof to the court after the petition is filed before they are entitled to the order for the election.

1. That the signatures to the petition are genuine.

Davis, County Judge, v. Henderson, &c.

2. That the signers are residents of the precinct or territory to be affected.

3. That they are equal in number to 25 per cent of the vote cast in the precinct or territory to be affected at the last preceding general election.

### AUTHORITIES CITED.

Ky. Stats., section 2554; Colvin, etc., v. Finch Ark. 87 S. W., 443; Early v. Raines, etc., 28 Ky. Law Rep., 416; Wyatt v. Ryan, 68 S. W., 134; O'Neal, etc., v. Minary, etc., 30 Ky. Law Rep. —.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

The Fifth magisterial district of Boyd county is composed of seven election precincts, five of which are within the corporate limits of the city of Ashland and embrace one-half of that city. Ashland is a city of the fourth class. The appellees filed a written petition with the county judge of Boyd county on the 25th day of February, and during the regular term of the Boyd county court, for the purpose of obtaining an order for an election in the Fifth magisterial district to determine whether or not spirituous, vinous, or malt liquors should be sold, bartered or loaned therein. This petition was signed by a number of voters equal to 25 per cent. of the votes cast in each of the said precincts at the preceding congressional election. At the next regular term of the Boyd county court, the regular judge was sick, and A. W. Starlin, one of the magistrates of said county, convened court and adjourned the hearing of the said petition until the following Thursday, at which time the regular judge was present and heard the application for said election. When the application came on for hearing, ten persons who had signed the petition came into court and filed a written statement requesting the

withdrawal of their names from the petition. Six of the petitioners resided in precinct No. 12 in Ashland, and after their withdrawal from the petition the number of signers was not equal to 25 per cent. of the number of votes cast in that precinct at the preceding general election. There still remained, however, 25 per cent. of the voters of the entire district to be affected. Thereupon the county judge entered an order refusing to order an election. Thereupon the petitioners instituted this action in the Boyd circuit court for a writ of mandamus against the county judge, directing and compelling him to order an election. In their petition and amended petitions they set up substantially the foregoing facts. A demurrer to the petition as amended was overruled. Appellant then filed an answer, in which he stated that the matter came before him as judge, and he believed he had discretion as to whether or not he would permit the withdrawal of the names, and that he exercised such discretion according to his best judgment and in good faith. The answer also presents the further question: Which election should control, the election of 1906 for members of Congress alone, or the election of November, 1905, for State, county, district, and city officers? If the latter should control, there was less than 25 per cent. of the voters in each precinct signing the petition, even before any names had been withdrawn. To this answer appellees filed a demurrer. The case was then submitted, and the court entered judgment sustaining appellees' demurrer to appellant's answer, and awarding the writ of mandamus. From that judgment the county judge prosecutes this appeal.

The first question presented for our consideration is: Has a person who has signed a petition for a

local option election the right to withdraw his name before the petition is acted upon? In the state of Ohio, where the power of ordering an election is vested in the city councils of certain municipalities, the Supreme Court, in Dutten v. Town of Hanover, 42 Ohio St. 215, laid down the following rule: "While such petition is under consideration, and before action thereon by the council, signers thereof may withdraw their names from such petition, and, if thereby the number of names is reduced below the requisite number, it is the duty of the council to refuse to order such election." The right of voters to withdraw their names from a petition for the granting of a license was sustained by this court in Simpson v. Commonwealth, 97 S. W. 404, 30 Ky. Law Rep. 132, wherein the court said: "It is true that ten of this number had previously petitioned the court to grant the license, but they had the right to change their minds and oppose the granting of the license, if they saw fit to do so, and the county judge was in error when he refused to consider their names upon the petition. He had no right to deny them the privilege of coming into court and stating to him that, although they had favored the granting of the license, they had upon reconsideration been opposed to it." The precise question was before this court in O'Neal v. Minary, 125 Ky. 571, 101 S. W. 951, 30 Ky. Law Rep. 891, and in discussing it the court said: "The county judge could not order an election on a petition signed by less than the statutory number of voters, and, although a voter had signed the petition, still he might, at any time before the petition was acted upon, withdraw his name, and, if this left less than the statutory number, no election could be ordered. The statute is not satisfied if

a petition signed by a sufficient number of voters is filed with the judge. There must be a sufficient number of voters asking the calling of the election. No one is responsible for the cost of the proceeding but the petitioners. No one is required to make a deposit but the petitioners. If litigation ensues, no one may be responsible but the petitioners. It would therefore be a very harsh rule to say that a person who had signed such a petition cannot withdraw from it before it is accepted. Remonstrances against the granting of licenses are frequently withdrawn in county courts, although the writing has been filed with the county court, and there is no sound reason why the same rule should not apply to a petition for an election under the local option act before it is acted on by the county court.'' Counsel for appellees insist that the facts of the foregoing case and of the case at bar are so different that the rule above announced should not apply. The only difference between the two cases is that in the former all the petitioners withdrew, while in the latter only a small number withdrew. If, therefore, all have the right to withdraw, it necessarily follows that a smaller number embraced within the all should have the same right. But counsel for appellees contend with great earnestness that the proper rule is the one laid down by the Supreme Court of Arkansas in Colvin v. Finch, 75 Ark. 154, 87 S. W. 443, wherein that court held that, in the absence of facts showing fraud, duress, or imposition, no signer should be permitted to withdraw his name from a petition, upon the theory that he who voluntarily sets on foot a proceeding for the enforcement of a salutary police regulation in any community should not be permitted to capriciously undo his work. This rule,

however, is not in harmony with our previous decisions, and we do not think the reason assigned for its application is sufficient to overcome the objections to the rule itself.  A petition is but a formal written request or prayer for a certain thing to be done.  He who signs it must do so voluntarily; otherwise he cannot be in the attitude of making a request.  The signature of the petitioner is but evidence of the request or prayer.  In the absence of anything to the contrary, the signature is conclusive.  But when the signer appears in court and asks that his name be withdrawn, he indicates that he is no longer a petitioner.  To hold that he is, is simply to make him a petitioner by a process of legal coercion which is contrary to the very spirit of a petition.  We are therefore of the opinion that the trial court did not err in permitting the petitioners in this case to withdrawn their names from the petition.

The next question presented is whether a petition for a local option election in a magisterial district shall be signed by a number of voters in each precinct equal to 25 per cent. of the votes cast in each precinct, or by 25 per cent. of the voters of the entire district.  The language of the statute (Ky. St. 1903, section 2554) is as follows: "Upon application by written petition, signed by a number of legal voters in each precinct of the territory to be affected, e qual to twenty-five per cent. of the votes cast in each of said precincts at the last preceding general election, and when for town or city elections, the number of votes cast at the last city or town election, ir shall be the duty of the judge of the county court in such county," etc.  In interpreting this section, this court, in Nall v. Tinsley, 107 Ky. 452, 54 S. W. 190, 21 Ky. Law Rep. 1167, said: "A careful reading of the sec-

tion shows that the first clause of it relates to legal voters in each precinct to be affected by the election. The territory referred to is a precinct or precincts which compose the political subdivision of a county. The second clause relates to city or town elections. When it is proposed to have an election in a city or a town, the petition must be signed by a number of legal voters equal to 25 per cent. of those cast at the last city or town election. When the election is proposed to be held in a territory comprising precincts, the petition should be signed by a number of voters equal to 25 per cent. of the votes cast in each of the precincts at the last preceding general election." In the case at bar, the territory to be affected is the Fifth magisterial district. This district comprises seven precincts. We are therefore of the opinion that the petition should have been signed by a number of voters in each precinct equal to 25 per cent. of the votes cast in each of the precincts at the last preceding general election, and that a petition signed by 25 per cent. of the voters of the entire district is not sufficient.

The next question involved is: What is meant by "the next preceding general election?" In view of the fact that nowhere in the Constitution or statutes is any attempt made to define a general election, the solution of the question is not altogether free from doubt. As there is usually greater interest, however, in local contests, and consequently a larger vote cast in elections for State or county officers, than in congressional elections, and the vote cast in the former a fairer test of the strength of the petition, we are of the opinion that the Legislature meant the next preceding general election at which officers for the

State or county embracing the district in question were elected.

For the reason stated, judgment is reversed, and cause remanded, with directions to dismiss the petition.

Petition for rehearing by appellees overruled.